Filed 11/20/25  P. v. Martin CA1/1
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br>v.<br>CURTIS MARTIN,<br><br>        Defendant and Appellant. | A171153<br><br>(Alameda County<br>Super. Ct. No. HC165401-1) |

Defendant Curtis Martin filed, in propria persona, a petition for writ of habeas corpus "concurrently with [a] motion for recall and resentencing" (capitalization omitted) pursuant to Penal Code section 1172.6.[1]  The trial court treated the filings as an "omnibus" habeas petition, which it denied. Defendant filed a notice of appeal as to his "Motion For Recall And Resentencing [P.C. § 1172.6]."  (Capitalization omitted.)  We reverse and remand for further proceedings.

## BACKGROUND

### The Underlying Cases

Defendant's "omnibus" filing referenced three criminal cases:

---

[1]  All further statutory references are to the Penal Code unless otherwise indicated.

1

*Case No. 112664*

In this case, defendant was convicted in September 1992 of one count of unlawful possession of an assault weapon (former § 12280, subd. (b), now § 30605). The trial court sentenced him to 16 months in state prison.[2]

*Case No. 119751*

In this case, the Alameda County District Attorney filed an information alleging one count of felony murder (§ 187). Devin Brewer and further alleging defendant committed great bodily injury and had suffered a prior conviction for possession of an assault weapon. In November 1994, pursuant to a negotiated disposition, the parties stipulated to a factual basis for the plea and defendant entered a no contest plea to one count of voluntary manslaughter (§ 192), a lesser included offense, in exchange for an aggravated 11-year prison term. The two remaining allegations were stricken.

*Case No. 165401*

This case arose out of the killings of Zoelina Taylor and her 17-month-old son. "According to a letter submitted by the Alameda County District Attorney's Office and attached to the probation officer's report and recommendation, [defendant] shot and bludgeoned to death Zoelina Taylor, age 38, on November 13, 2009. Two days later, police found the body of Taylor's toddler, 17-month-old Jashon Williams, floating in the Berkeley Marina. '[Defendant] killed Jashon sometime between October 25, 2009 and

---

[2] The information and reporter's transcripts for this case are not included in the record on appeal, and this information is taken from the trial court's order denying defendant's "omnibus" petition for writ of habeas corpus.

November 8, 2009.'  The letter further notes that [defendant] was convicted previously for killing a three-year-old child in 1994."[3]

In February 2012, the Alameda County District Attorney filed an amended information alleging two counts of felony murder (§ 187, subd. (a)) and one count of felony possession of a firearm by a felon (former § 12021, subd. (a)(1), now § 29800, subd. (a)).  As to counts 1 and 2, the information additionally alleged two enhancements: defendant personally and intentionally discharged a firearm causing the victims' death (§§ 12022.7, subd. (a), 12022.53, subds. (d), (g)), and defendant personally used a firearm (§ 12022.5, subd. (a)).  It also alleged two special circumstances as to count 1: defendant intentionally killed the victim because she was a witness to a crime and he committed the murder by means of lying in wait (§ 190.2, subd. (a) (10),[4] (15)).  As to count 2, the information alleged a multiple murder special circumstance (*id.*, subd. (a)(3)).  The information further alleged defendant had three prior convictions and two prior strikes.

Pursuant to a negotiated disposition, the parties stipulated to a factual basis for the plea and defendant pleaded guilty to first degree murder (count 1) and admitted both firearm enhancements and both special circumstances.  Defendant also pleaded guilty to second degree murder (count 2) and admitted the multiple murder special circumstance, and pleaded guilty to being a felon in possession of a firearm (count 3).  He also admitted his three prior convictions for voluntary manslaughter, possession of an assault weapon, and first degree robbery, two of which were prior strikes.

---

[3]  These facts are also taken from the trial court's written order denying defendant's "omnibus" habeas petition.

[4]  We note the information mistakenly lists section 190, which provides for the punishment for murder, instead of section 190.2, subdivision (a)(10), which provides for the penalties for special circumstances.

The court sentenced defendant to two consecutive terms of life without the possibility of parole for counts 1 and 2 (first and second degree murder), tripled because of his strike priors, with an additional 10 years to run consecutively. As for count 3 (possession of a firearm by a felon), a three strikes offense, the court sentenced defendant to 25 years to life, with 10 additional years added to run consecutively, and consecutively to counts 1 and 2. Finally, the court stayed the three-year term for the section 12022.7 firearm enhancement. Thus, defendant was sentenced to an aggregate term of life without the possibility of parole, plus 55 years to life.[5]

### *Defendant's "Omnibus" Filing*

In November 2023, defendant mailed a 125-page packet to the Alameda County Superior Court. The packet contained a petition for writ of habeas corpus listing case Nos. 112664, 119751, and 165401. The title page of the habeas petition stated it was "filed concurrently with motion for recall and resentencing [P.C. § 1172.6] to augment the record with newly discovered evidence." (Capitalization omitted.) The court filed the petition on November 28, 2023.

Also included in the packet, and separately file stamped the same day as the habeas petition, was a document titled "Notice and Motion for recall and resentencing [S.B.–775] [P.C. § 1172.6]." (Capitalization omitted.) The motion referenced the same three case numbers (Nos. 112664, 119751, & 165401) as the habeas petition.

The trial court treated the 125-page packet of documents as an "omnibus petition for writ of habeas corpus," which it subsequently denied.

---

[5] The abstract of judgment incorrectly lists the terms for counts 2 and 3 as running concurrently and not consecutively as the trial court pronounced.

4

(Capitalization omitted.) With respect to its procedural handling of defendant's submission, the court stated defendant filed a "125-page document consisting of a petition for writ of habeas corpus, supporting exhibits, and petition for recall under Penal Code section 1172.6, among other things." The court then ruled that to the "extent [defendant] purports to seek relief under . . . section 1172.6 by way of the instant omnibus habeas corpus petition," the request was "denie[d] without prejudice those claim(s), subject to [defendant] filing separate resentencing petitions under section 1172.6 in each of the cases he believes are subject to section 1172.6." (Capitalization & italics omitted.) The court went on to address the merits of and to deny the habeas petition.[6]

## DISCUSSION

### *Appealability*

Because orders denying petitions for writs of habeas corpus are non-appealable orders (*Briggs v. Brown* (2017) 3 Cal.5th 808, 836 ["A petitioner currently has no right to appeal from a superior court denial of habeas corpus relief."]), the Attorney General maintains defendant's appeal from the trial court's order must be dismissed. He maintains the trial court properly considered defendant's 125-page filing an omnibus habeas petition because the habeas petition and purported motion were mailed as a single packet, filed on the same day, and "no new case number was assigned" to the motion. Additionally, the purported motion was inserted between the habeas petition and the exhibits filed in support of the petition and the habeas petition, itself, sought relief in part pursuant to section 1172.6. Indeed, according to the

---

    6 Regarding the first two cases, Nos. 112664 and 119751, the court found defendant had served his sentences, and thus the court lacked jurisdiction and dismissed the habeas petition to the extent his claims were "collateral attacks on his convictions" in those cases.

5

Attorney General, defendant, himself, "understood the filing as a single document seeking habeas corpus relief" because he inquired about the status of his writ petition in a letter dated December 18, 2023. The letter received by the superior court on December 26, 2023, stated: "On 11-25-23 I sent a Writ of Habeas Corpus to the court, DA office, public defenders office. I'd like notice that its [*sic*] been received and filed."

However, the record seems clear enough that defendant submitted not only a petition for writ of habeas corpus, but also a separate "motion" for resentencing. The title page of the habeas petition states it was being filed "concurrently with [a] motion for recall and resentencing" pursuant to section 1172.6. (Capitalization omitted.) Defendant included a separate section 1172.6 "motion" with its own title page and caption designating it as such. That defendant, a prisoner, mailed the documents in one envelope as opposed to two, and placed his "motion" for resentencing before the exhibits to the petition for writ of habeas corpus, does not change the fact he submitted a separate "motion" to the court. As for the assignment of only one case number—for the habeas proceeding—this was a clerical matter over which defendant had no control. In addition, in September 2024, defendant sent a second letter to the court stating: "I am requesting to know the status of the petition for recall and resentencing under SB-775, P.C. § 1172.6[] that was filed on 11-22-23 . . . and was counsel appointed? If so, would you please provide the name and address of assigned counsel. . . ."

In sum, we do not agree with the Attorney General that defendant's "motion" for recall and resentencing under section 1172.6 must be construed as part of an "omnibus" habeas petition. We thus conclude that to the extent the trial court treated defendant's 125-page submission as such, it erred.

The Attorney General further contends that even if defendant's " 'Notice and Motion for Recall and Resentencing' " was a "separately filed motion, [defendant] still may not appeal" because the "only order entered by the trial court [is an] order denying habeas corpus relief" and that order is not appealable. We also disagree with the Attorney General on this point.

As we have recited, the trial court did, in fact, make a ruling as to defendant's resentencing "motion." At the outset of its written order it stated: "To the extent [defendant] purports to seek relief under Penal Code section 1172.6 by way of the instant omnibus habeas corpus petition, the Court DENIES WITHOUT PREJUDICE those claim(s), subject to [defendant] filing separate resentencing petitions under section 1172.6 in each of the cases he believes are subject to section 1172.6." (Italics omitted.) At the conclusion of its order, the court stated: "The Court DENIES WITHOUT PREJUDICE [defendant's] purported claims for relief under Penal Code section 1172.6, subject to [defendant] filing separate resentencing petitions in each of the case(s) he believes are subject to that statute. [Defendant's] collateral attacks on cases 112664 and 119751 are DISMISSED for lack of jurisdiction. The Court otherwise DENIES WITH PREJUDICE the balance of [defendant's] collateral attacks for the above-stated reasons." Thus, for all practical purposes, the trial court summarily dismissed defendant's "motion" on procedural grounds.

### Harmless Error

The Attorney General next maintains that even if no procedural impediment bars our review of the trial court's handling of defendant's "motion" for resentencing, and further assuming the trial court erred in summarily denying defendant's "motion," any error was harmless as to case No. 165401 because the record demonstrates defendant was the actual killer

and therefore ineligible for resentencing relief.  The Attorney General concedes, however, the record in case No. 119751 does not so demonstrate and that case should be remanded to allow the trial court to pass on the prima facie sufficiency of defendant's resentencing "motion" and take any further action as may be required in accordance with the court's ruling on that threshold issue.  (See *People v. Lewis* (2021) 11 Cal.5th 952, 960 (*Lewis*) [where resentencing petition complies with the three facial sufficiency requirements of § 1172.6, subd. (b), the court proceeds to consider whether the petitioner has made a "prima facie case for relief" under subd. (c)].)

Defendant urges us not to consider the Attorney General's harmless error argument and to also remand case No. 165401 for further proceedings, citing *People v. Gallardo* (2024) 105 Cal.App.5th 296 (*Gallardo*).  In that case, the Court of Appeal refused to consider a harmless error argument where the trial court, although appointing counsel for the defendant, summarily denied a resentencing petition at an initial status conference prior to any briefing and in the absence of any documentary evidence.  (*Id.* at pp. 299–300.)  The appellate court concluded the petition was facially sufficient and therefore the trial court had erred in failing to proceed with briefing and review of any evidence submitted by the parties.  (*Id.* at p. 302 ["court failed to adequately conduct the proceedings required by section 1172.6, subdivision (c)"].)  The Attorney General sought judicial notice of the record of conviction and, based thereon, argued the error was harmless.  (*Ibid.*)  The court declined to address the Attorney General's argument, characterizing the Attorney General's argument as asking it to undertake a statutory task with which the trial court was charged—reviewing the record, and specifically "the jury instructions and verdict forms," to determine if they "demonstrate[d] [the defendant was] precluded from relief as a matter of law."  (*Id.* at p. 299.)

8

Although acknowledging the harmless error doctrine applies to trial court orders on section 1172.6 and that whether a record of conviction shows, as a matter of law, that a defendant is ineligible for relief is reviewed de novo, the court declared it would "not perform the trial court's statutorily mandated task for the first time on appeal," citing to a "canon of appellate review" that "as the reviewing court, [it was] 'neither authorized nor inclined to substitute our judgment for the judgment of the trial court.'" (*Gallardo*, at pp. 302–303.)

We do not read *Gallardo* as categorically holding that appellate courts should never engage in a harmless error analysis when a trial court errs in its initial handling of a resentencing petition. Rather, *Gallardo* was a case where the appellate court declined to exercise its discretion to take judicial notice of the record of conviction and concluded remand was warranted. Indeed, our Supreme Court has squarely held the *Watson*[7] harmless error standard is applicable to threshold rulings on resentencing petitions. (See, e.g., *Lewis, supra,* 11 Cal.5th at pp. 973–975 [case remanded for Court of Appeal to determine whether trial court's error in summarily dismissing resentencing petition without appointing counsel and after reviewing appellate court's opinion affirming conviction was harmless under *Watson*]; *People v. Beaudreaux* (2024) 100 Cal.App.5th 1227, 1232 (*Beaudreaux*) [trial court erred in failing to appoint counsel and summarily dismissing resentencing petition based on facts recounted in appellate court's prior opinion affirming conviction, but error was harmless given that record of conviction established defendant was actual killer].)

We will therefore spare the trial court from having to use its sorely strained resources to decide the harmless error argument advanced by the

---

[7] *People v. Watson* (1956) 46 Cal.2d 818.

9

Attorney General here—that because defendant "admitted inflicting great bodily injury causing death," he was "was ineligible for relief as the actual killer." (See *People v. Lopez* (2022) 78 Cal.App.5th 1, 14 (*Lopez*) ["A petitioner is ineligible for resentencing as a matter of law if the record of conviction conclusively establishes, with no factfinding, weighing of evidence, or credibility determinations, that (1) the petitioner was the actual killer, or (2) the petitioner was not the actual killer, but, with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree, (3) the petitioner was a major participant in the underlying felony and acted with reckless indifference to human life, or (4) the petitioner acted with malice aforethought that was not imputed based solely on participation in a crime."].)

Because defendant, pursuant to his plea, was convicted of first degree murder, he necessarily was found to have acted with malice. He was also, pursuant to his plea, found to have "personally and intentionally discharged a firearm, and caused great bodily injury and death" of the victim. Given that he admitted and was convicted of first degree murder *and* admitted and was found to have personally and intentionally shot the victim causing her death, the record of conviction conclusively establishes he was the killer. (See *People v. Curiel* (2023) 15 Cal.5th 433, 463 ["[w]hile a finding of intent to kill does not, itself, suffice to refute a petitioner's allegation under section 1172.6 . . . [o]ther aspects of the record, such as additional . . . findings," may "conclusively refute a petitioner's allegation that he or she could not be convicted of murder under current law"].)

Defendant's reliance on *People v. Offley* (2020) 48 Cal.App.5th 588, is misplaced. *Offley* involved an attack by five defendants on two victims. At

least three of the defendants fired shots into the victims' car. One victim was killed, and the other was seriously wounded. (*Id*. at p. 592.) The trial court instructed the jury on "the natural and probable consequences doctrine in cases of conspiracy." (*Id*. at p. 593.) Although the prosecution alleged Offley had personally and intentionally fired a handgun causing the victim's death, the prosecutor "agreed" during the trial "that a bullet from Offley's gun could not have killed" the victim. (*Id*. at pp. 592, 594.) Offley "was convicted as a conspirator to a gang murder under a natural and probable consequences theory (*id*. at p. 593), which was problematic because 'the natural and probable consequences doctrine can no longer support a murder conviction' (*id*. at p. 595). In later section 1172.6 resentencing proceedings, the People relied on a . . . jury finding that defendant Offley discharged a firearm in the course of the offense and argued that that made him liable for murder under current law. (*Offley*, at p. 598.) Unpersuaded, the Court of Appeal reversed a summary dismissal because of the possibility that the jury convicted Offley on a natural and probable consequences theory based on his mere participation in a murder, without necessarily finding he acted with the requisite mens rea. (*Id*. at p. 600.)" (*Beaudreaux, supra*, 100 Cal.App.5th at pp. 1244–1245; *id*. at p. 1245 [*Offley* "inapposite because no natural and probable consequences instruction was given"].)

Defendant's assertion that an information can always be amended and suggestion the prosecution might have done so here is irrelevant. Regardless of what theoretically "could have" transpired, defendant was convicted of first degree murder and found to have "personally and intentionally discharged a firearm" causing the victim's death. (See *People v. Glass* (2025) 110 Cal.App.5th 922, 929 [*Offley* inapposite where the defendant, pursuant to plea, admitted as to two victims he "(1) 'did unlawfully kill a human being'

11

[the victim] and 'did personally use a firearm in the commission of this' killing; and (2) 'also did unlawfully attempt to murder another separate human being' "].)

Thus, this is not a case like *People v. Eynon* (2021) 68 Cal.App.5th 967 (*Eynon*), for example. In that case, the defendant pled guilty at a time when "the law allowed him to be convicted of first degree premeditated murder on a natural and probable consequences theory, and it also allowed him to be convicted of first degree felony murder without being the actual killer, acting with intent to kill, or being a major participant in the underlying felony who acted with reckless indifference to human life. The accusatory pleading did not exclude either of those theories—the prosecution could have relied on natural and probable consequence, felony murder, or both if the case had proceeded to trial . . . . Although he admitted that he was liable for a murder committed with malice, deliberation, and premeditation, he did not admit that *he acted with* malice, deliberation, or premeditation. And although he admitted that he was liable for a murder committed in the course of a robbery, he did not admit that he was the actual killer, acted with intent to kill, or was a major participant in the robbery and acted with reckless indifference to human life." (*Id.* at p. 979.) This is not case with defendant's plea and admission here. (See *People v. Fisher* (2023) 95 Cal.App.5th 1022, 1030 [*Eynon* inapplicable where "the sole defendant, did not merely plead guilty to murder and attempted murder: he expressly admitted to shooting and killing two people, and shooting and injuring a third person"].)

We therefore agree with the Attorney General that as to the murder of Zoelina Taylor (count 1), defendant was ineligible for resentencing under section 1172.6 as a matter of law. His guilty plea to first degree murder combined with his admission that he personally and intentionally discharged

12

a firearm causing the victim's death "*conclusively* establish—with no factfinding, weighing of evidence, or credibility determinations—that [he] was convicted as the actual killer."[8] (*People v. Harden* (2022) 81 Cal.App.5th 45, 47.)

However, the Attorney General's argument—predicated on defendant's admission that he personally and intentionally discharged a firearm causing the victim's death—does not apply to the murder Jashon Williams, Taylor's 17-month-old son (count 2). The only allegation made in connection with count 2, and which defendant admitted, was a multiple murder special circumstance. Since the Attorney General has made no harmless error argument in connection with this count we must remand not only as to case No. 119751 but also, in part, as to case No. 165401. In doing so, we are expressing no opinion as to how the trial court may rule, following appointment of counsel and briefing, as to whether the records in these cases may otherwise conclusively establish that defendant is ineligible for resentencing.

### *Abstract of Judgment in case No. 165401*

In sentencing defendant in case No. 165401, the trial court specified counts 2 and 3 should run "consecutive to each other and to Count One." However, the abstract of judgment lists counts 2 and 3 as "concurrent."

---

[8] We note that the same conclusion is dictated by defendant's admission of the two special circumstances—that he (1) intentionally killed the victim because she was a witness to a crime and (2) committed the murder by means of lying in wait. (See, e.g., *People v. Cage* (2015) 62 Cal.4th 256, 278 ["the lying-in-wait special circumstances requires intent to kill"]; see also *People v. Strong* (2022) 13 Cal.5th 698, 710 ["Senate Bill [No.] 1437 relief is unavailable if the defendant was either the actual killer, acted with the intent to kill, or 'was a major participant in the underlying felony and acted with reckless indifference to human life as described in subdivision (d) of . . . Section 190.2' "].)

Should the trial court determine defendant is ineligible for relief pursuant to section 1172.6, we direct the trial court to issue an amended abstract of judgment, which corrects this error. (See *People v. Mitchell* (2001) 26 Cal.4th 181, 185 [courts may correct clerical error in their records at any time and appellate courts that have assumed jurisdiction over a case may order correction of abstracts of judgment that do not accurately reflect judgment].)

## DISPOSITION

The trial court's order, to the extent it denied defendant's "motion" for resentencing under section 1172.6 is reversed, in part, and the matter is remanded for further proceedings consistent with this opinion.

                                          _____

                                          Banke, J.

We concur:


_____

Humes, P. J.


_____

Langhorne Wilson, J.


A171153, People v. Martin